(Surrogate's Court, New York County. December, 1903.)

1. TAXATION—TRANSFER TAX—PROPERTY SUBJECT.

A resident of New York City died after the record of the assessed valuation and after the time for application to revise and cancel the same had expired under the amended charter of the city (Laws 1901, p. 1, c. 466). The board of taxes and assessments had not at the time delivered to the board of aldermen the assessment rolls, and the taxes had not at the time been extended. Held, that the executors were entitled to a deduction of such taxes on a transfer tax appraisal of the estate; they being debts which the executors were liable for, under Code Civ. Proc. § 2719.

In the matter of the estate of Eugene A. Hoffman. From an order fixing and assessing the transfer tax, the executor appeals. Appeal sustained.

Paul R. Towne, for appellant.
Edward H. Fallows, for the State Comptroller.

THOMAS, S. The testator, who was a resident of the city and county of New York, died June 17, 1902. This was subsequent to the completion under the Greater New York charter, as amended in 1901, of "the annual record of the assessed valuations of real and personal estate," and subsequent to the time when any application could be made for the correction, cancellation, or revision of any assessment, but prior to the delivery of the assessment rolls by the board of taxes and assessments to the board of aldermen, and prior to the extension thereon of the amount of the tax. Sections 889, 892, 895, 898, 907, 909 (Laws 1901, pp. 378, 379, 381, 382, c. 466). The executors paid the taxes assessed against the decedent for the year 1902, amounting to $61,496.46 for real property, and to $1,705.08 for personal property. The transfer tax appraiser refused to allow any deduction for these payments, and from the order made on his report the executors appeal. It is conceded that at the time of the decedent's death the taxes upon the real estate had not become a lien.

In Matter of Babcock, 115 N. Y. 450, 22 N. E. 263, it was held that taxes upon real estate, assessed under the provisions of the New York

City consolidation act of 1882 (Laws 1882, c. 410) against a resident of the city, who died one day after the time prescribed for the delivery of the assessment rolls to the board of aldermen, were payable by his executors out of his estate, under the statute prescribing the order in which a decedent's debts shall be paid. Though the decedent in the present case died before the delivery of the assessment rolls to the board of aldermen, I think the case is nevertheless within the spirit and reason of that decision. Speaking of the statute above referred to (now, substantially, Code Civ. Proc. § 2719), the court says, at page 458, 115 N. Y., page 265, 22 N. E.:

"The plain meaning of the act is that assessments, so far completed that the name of the person named as owner cannot be changed or altered by the assessment officers before the death of such person, shall be payable from his estate in due course of administration. Any other rule would deprive the state of the personal responsibility of parties liable to the payment of taxes who should die between the first Monday of January and the first Monday of September in each year. Such a construction is opposed to the theory of the laws relating to assessments for taxation, and cannot be entertained."

At the time of the death of this decedent, the books had been closed to public inspection, and the time for the revision, cancellation, or correction of an assessment. Sections 892, 895, and 898, of the charter, as amended in 1901. See, also, People ex rel. Bronx Gas Co. v. Barker, 22 App. Div. 161, 47 N. Y. Supp. 1020; People ex rel. Brewing Co. v. Feitner, 41 App. Div. 496, 58 N. Y. Supp. 670; Sisters of St. Francis v. Mayor, 51 Hun, 355, 3 N. Y. Supp. 433; Ass'n for Colored Orphans v. Mayor, 104 N. Y. 581, 12 N. E. 279. Matter of Maresi's Estate, 74 App. Div. 76, 77 N. Y. Supp. 76, is distinguishable, as the decedent in that case died January 30th, or shortly after the opening of the books to public inspection.

The principles which apply in the present case are different from those which apply in determining the liability for taxes of a former owner of real estate after a transfer of title by voluntary conveyance or condemnation proceedings. My attention has been called to a case of the latter kind recently decided by the Court of Appeals. Buckhout v. City of New York (decided in the Court of Appeals November 10, 1903) 68 N. E. 659, reversing 82 App. Div. 218, 81 N. Y. Supp. 723. It is inapplicable here, except in so far as it touches upon the question whether or not, as a general rule, a completed tax upon real estate creates a debt against the owner, as a primary liability, with a lien on the land as security. The court did not feel called upon to consider this question. It was considered and answered in the affirmative in Matter of Hun, 144 N. Y. 472, 39 N. E. 376. But the State Comptroller contends that this principle does not hold with respect to taxes upon real estate imposed under the charter of the city of New York, because said charter expressly declares such taxes to be a lien upon the land, and makes no provision for their collection by distress and sale of goods; and he cites Krueger v. Schlinger, 19 Misc. Rep. 221, 43 N. Y. Supp. 305, and Matter of Hewitt, 40 Misc. Rep. 322, 81 N. Y. Supp. 1030. In the particulars he mentions, however, the provisions of the New York City consolidation act of 1882, under which the taxes were imposed in the Babcock Case, supra, were substantially the same as those of the present charter. Consolidation Act

1882 (Laws 1882, pp. 232, 233, 251, 254, c. 410) §§ 846, 853, 915, 926; Charter (as amended in 1901) §§ 918, 926, 1017, 1027 (Laws 1901, pp. 390, 393, 432, 437, c. 466). Furthermore, it would be unreasonable to suppose that by directing the sale of the land without a previous resort to personalty—a procedure not permitted under an execution, and which would ordinarily be considered harsh—the Legislature intended to curtail or impair any of the rights of the state. Neither is it to be presumed that it was the legislative intent to abrogate in this manner as to the city of New York that part of section 2719, Code Civ. Proc., which requires an executor or administrator to pay "taxes assessed on the property of the deceased previous to his death."

The State Comptroller further contends that, the decedent having died prior to the time when all taxes become due and payable under the charter, neither the taxes upon the personal nor those upon the real property could become debts of his estate. But the decedent in the Babcock Case, supra, also died before the time when taxes could be declared due and payable under similar provisions of the act then in force. Consolidation Act 1882 (Laws 1882, pp. 230, 231, c. 410) §§ 833, 841; Charter (as amended in 1901) §§ 911, 914.

The appeal is sustained both as to the taxes on the real and those on the personal property.

Appeal sustained.