UNDERGROUND ELECTRIC RYS. CO. OF LONDON, Limited, v. OWSLEY et al.

(Circuit Court, S. D. New York. October 6, 1911.)

**1. Dower (§ 95*)—Liens—Taxes.**

Greater New York Charter (Laws 1901, c. 466) §§ 894, 1017, provide that real estate taxes need not be assessed against the owner, but are a lien until paid prior to all other charges, and Code Civ. Proc. N. Y. § 2719, makes it the duty of the executor to pay "taxes assessed on the property of the deceased previous to his death" next after debts entitled to a preference under the laws of the United States and before all other claims. Held, that where taxes on New York lands were assessed to a wife during her husband's life, which should have been assessed to him, and after his death the property was sold in receivership proceedings to preserve the estate pending litigation, the taxes being a lien on the land which the executor was bound to pay, the widow was entitled to have her dower computed in the fund before such taxes were deducted.

[Ed. Note.—For other cases, see Dower, Dec. Dig. § 95.*]

**2. Life Estates (§ 18*)—Tenant's Duty to Pay Taxes.**

A life tenant in possession of real estate under a will is responsible for the taxes assessed during such occupancy.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 39-51; Dec. Dig. § 18.*]

**3. Dower (§ 112*)—Settlement Agreement—Claims Against Widow.**

A widow, given a life estate in real estate by her husband's will, occupied it for nearly two years, and then claimed against the will. Thereafter, in order to promote a sale, she agreed that her dower should be admeasured in a fixed sum to be paid without interest, damages, etc., out of the proceeds of a sale of the property, and that she be permitted to occupy the property without rent or other charges for any period since the death of her husband, subject to the possession of a receiver of his property until sold. Held, that such agreement was effective to release all claims against her for occupation during such period.

[Ed. Note.—For other cases, see Dower, Dec. Dig. § 112.*]

**4. Dower (§ 95*)—Admeasurement—Taxes.**

Where by reason of a dower settlement agreement taxes assessed against certain of the real estate after the husband's death did not create any personal liability, but were only a lien on the land, her interest which the agreement provided should be valued as of a date after the taxes had become a lien was subject to the taxes, so that her dower interest in a fund representing such real estate should be computed after the taxes were paid.

[Ed. Note.—For other cases, see Dower, Dec. Dig. § 95.*]

Suit by the Underground Electric Railways Company of London, Limited, against Louis S. Owsley, as executor of the last will and testament of Charles T. Yerkes, deceased, and others. On rule to determine the dower interest of decedent's widow.

Kearny & Dickinson, for executors of Mary A. Yerkes, deceased.
Joline, Larkin & Rathbone, for executor of Charles T. Yerkes.
Jos. P. Cotton, for receiver.

WARD, Circuit Judge. The question in this case is whether the dower right of Mary Adelaide Yerkes, widow of Charles T. Yerkes, should be charged with any part of the unpaid taxes which were a lien upon his real estate.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Reference may be had to 169 Fed. 671 for the circumstances which led this court to appoint a receiver for the preservation of the decedent's estate April 5, 1909. Many controversies existed between the widow on one hand and the executors and the heirs of the decedent on the other. To settle them an agreement was entered into November 11, 1909, which established Mr. Yerkes' title to the real estate at the time of his death, December 29, 1905, as against the widow's claim of title thereto, and provided that the gross money value of her dower should be calculated in accordance with the mortality tables at the date of valuation and be paid to her out of the proceeds of sale of the real estate to be sold by the receiver under a decree of this court and the balance to the executor for payment of creditors of the estate.

The material provisions of the agreement upon this subject are the following:

"* * * And the parties further consent that said gross sum shall be the amount that a person of the age of forty-eight years at the time of the admeasurement would be entitled to receive thereunder; and shall be admeasured as of that date; and such gross sum shall be paid forthwith, without interest thereon, and without damages for detention or costs taxed against any party to this agreement, but the disbursements of such proceeding may be paid out of the proceeds of the sale in such manner as the court may direct." (Article 3.)

"It is understood and agreed that the widow shall be permitted, during the receivership in the suit of the Underground Electric Railways Company of London, Limited, against Owsley, to continue to occupy the premises at the southeast corner of Sixty-Eighth street and Fifth avenue and the stable hereinbefore referred to without rent or other charge therefor for any period since the death of said Charles T. Yerkes, subject to the possession of the receiver in said suit, until a sale thereof shall have been made as herein provided. * * *" (Article 10.)

Thereafter and subsequent to the time the taxes became a lien the widow's dower was fixed as 20.18 per cent. of the proceeds of sale of the premises. They were sold by the receiver, the taxes paid out of the proceeds of sale to the amount of $191,379.57, and a further sum equal to 20.18 per cent. thereof was reserved in addition in the hands of the receiver, subject to the future determination of this court as to what portion thereof, if any, should be paid to the widow in settlement of her dower. In New York City taxes on real estate are not required to be assessed against the owner (section 894, Greater New York Charter [Laws 1901, c. 466]), and they "continue to be until paid a lien thereon and shall be preferred in payment to all other charges." Section 1017. The only effect of omitting the real owner's name or of assessing in the name of one not the owner is to confine the city's remedy to a lien upon the land. Haight v. Mayor, 99 N. Y. 280, 1 N. E. 883. Section 2719 of the New York Code of Civil Procedure makes it the duty of the executor to pay "taxes assessed on the property of the deceased previous to his death" next after debts entitled to a preference under the laws of the United States and before all other claims.

[1] The premises were assessed for the years 1903, 1904, and 1905, before the death of Mr. Yerkes, in the name of Mary Adelaide Yerkes. As the settlement agreement and the decree of sale in pursuance thereof determine that Charles T. Yerkes, and not Mary Adelaide Yerkes, was then the owner, the taxes were not assessed against the rightful

owner, there was no personal liability for them on his part, and the city's right was restricted to a lien. The executor cites Krueger v. Schlinger, 19 Misc. Rep. 221, 43 N. Y. Supp. 305, and Lauby v. Gill, 42 Misc. Rep. 334, 86 N. Y. Supp. 718, in which it was held that the taxes mentioned in section 2719 are such as were personally owed by the decedent. The Court of Appeals, however, makes no such distinction, but applies the provision to all taxes assessed against the premises before the decedent's death. In Matter of Gill, 199 N. Y. 155, 92 N. E. 390, Cullen, C. J., saying at page 159:

"Nor is it necessary to inquire whether in Brooklyn at the time of the imposition of these taxes they constituted a personal charge against the testator or not. Throughout all the state, in the case of a tax against the lands of a nonresident, no personal charge is created against any person, but simply a lien on the land. The command of the statute, however, is imperative, and executors and administrators must pay out of the personalty all taxes on the property of the deceased. Therefore the liability of the appellant as devisee of the real estate was not primary, but only secondary."

It follows that the executors of the widow (who has since died) are entitled to 20.18 per cent. of the taxes paid for these years, with any interest that has accrued on the same while in the receiver's hands.

[2] The will gave the widow a life estate in the premises in question, and she did remain in possession after the death of the decedent, December 29, 1905, until May 14, 1907, when she claimed against the will.

During this interval the premises were assessed for taxes in 1906 and 1907 in her name as owner, and, if she was in possession as life tenant under the will, she would be responsible for the taxes of those years, as the executor contends.

[3] But there is nothing to show whether she occupied under the will or under her claim of title, and I think the effect of the settlement agreement was to wipe out claims of every nature against her for occupation during this period.

[4] Therefore we have to consider the taxes for 1906, 1907, 1908, and 1909 after the death of Mr. Yerkes, without reference to her occupation. They were assessed against some of the premises as owned by Mary Adelaide Yerkes and against others as owned by Charles T. Yerkes. In neither case was there any personal liability, because under the settlement agreement and decree Mrs. Yerkes was not the owner during any of this period, and Mr. Yerkes was dead. Consequently for these taxes there was no liability except of the land by virtue of the city's paramount lien. If the premises had gone into the possession of heirs or devisees, they would have been liable as between them and the widow for taxes assessed during their occupation. But the controversy is entirely between the executor on behalf of creditors and the widow. He neither owned nor occupied the premises, and it is established by the settlement agreement that she never owned them, is in no way chargeable because of occupation, and that her dower is to be valued of a date after the taxes had become a lien. The land owed the taxes and the land actually paid them. I think the widow's interest was subject to the lien of the taxes, and therefore the per-

centage retained for these years, with any accrued interest, must go to the executor of Charles T. Yerkes.

It was understood between the parties and the court that this question should be determined within two weeks after the sale of the premises, but because of the delay of the parties the receiver has incurred an indebtedness for another annual premium on his bond to the amount of $125 for payment of which he has no other funds in his hands than the one now being distributed. This charge must be paid first, and the balance distributed in accordance with this opinion.